UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 8:19-cr-488-T-36JSS

ASDRUBAL QUIJADA MARIN,
JUAN CARLOS ACOSTA HURTADO,
RAFAEL ANTONIO QUERALES GRAFE,
EDWIN RAMON MARCANO MORALES,
JUAN CARLOS DIAZ MORALES,
HENRY JOSE MARQUEZ and
JOSE RAFAEL PEREZ COLINA
_____/

# O R D E R

This matter comes before the Court upon the Report and Recommendation of Magistrate Judge Julie Sneed [Doc. 151], the objections filed by the Defendants [Docs. 153, 155, 161],[1] and the United States' response [Doc. 171].  The Court, having considered the submissions and being fully advised in the premises, will **ADOPT** the Report and Recommendation of the Magistrate Judge and **GRANT** the United States' Motion for Authorization to Destroy Bulk Contraband [Doc. 88] and **DENY** the Motions to Suppress, Dismiss, and Supplement that Defendants have filed[2] [Docs. 103, 105, 145, 147].

## I.   BACKGROUND

On October 16, 2019, the United States indicted Defendants Asdrubal Quijada Marin, Juan Carlos Acosta Hurtado, Rafael Antonio Querales Grafe, Edwin Ramon Marcano Morales, Juan Carlos Diaz Morales, Henry Jose Marquez, and Jose Rafael Perez Colina for drug related offenses

---

[1] Defendants have moved to adopt each other's objections. [Docs. 154, 156, 157, 158, 160, 162, 163, 164, 165]. The Court granted these motions. [Doc. 169, 170].

[2] Defendants had also moved to adopt each other's motions. For ease of reference, the Court has at times referenced individual motions as "Defendants' motion."

in violation of 46 U.S.C. §§ 70503(a). [Doc. 1]. Count One of the indictment charges that "while upon the high seas" Defendants "knowingly, willfully, and intentionally combine[d], conspire[d], and agree[d] with each other and other persons . . . to possess with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine." *Id.* at pp. 1-2. Count II alleges that Defendants "knowingly and intentionally, while aiding and abetting each other and other persons . . .possess[ed] with intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine." *Id.* at p. 2. For purposes of the motions before the Court, the events leading to the charges were set in motion around August 12, 2019, when the United States Coast Guard ("the Coast Guard") received information regarding a vessel, the *Zumaque Tracer*, that was anchored outside the territory of Aruba for several weeks. [Doc. 81-1 at p. 1]. Suspecting that the vessel was involved in illicit drug trafficking, U.S. law enforcement personnel conducted right-of-approach questioning.[3] *Id.* The vessel was flying the flag of Cameroon and the master of the vessel claimed Cameroonian registry over the vessel. *Id.* On August 21, 2019, the government of Cameroon confirmed the registry of the vessel and granted permission for U.S. law enforcement personnel to stop, board, and search the following day. *Id.* at p. 2. On August 30, 2019, U.S. law enforcement personnel located the vessel and conducted right of approach questioning. *Id.* The master of the vessel again indicated its registry as Cameroonian. *Id.* In light of the consent granted by Cameroon, the vessel was boarded and searched by U.S. law enforcement personnel. *Id.* They recovered approximately 4,225 kilograms of contraband which

---

[3] "The 'right of approach' is a doctrine of international maritime common law that bestows a nation's warship with the authority to hail and board an unidentified vessel to ascertain its nationality." *United States v. Romero-Galue*, 757 F.2d 1147, 1149 n.3 (11th Cir. 1985). "The 'right of approach' is codified by article 22 of the Convention on the High Seas." *Id.* (citing Convention on the High Seas art. 22, *opened for signature* Apr. 19, 1958, 13 U.S.T. 2312).

tested positive for cocaine. *Id.* Thereafter, Defendants were shackled to the deck of the Coast Guard vessel in accordance with standard procedure.[4] *Id.*

On September 3, 2019, the United States again reached out to Cameroon, this time to request that country waive its right to exercise primary jurisdiction over the vessel, its cargo, and its crew. *Id.* The request was acknowledged by Cameroon three days later. *Id.* On September 19, 2019, the United States reiterated its request to Cameroon. *Id.* Around October 12, 2019, the United States received a vessel registry deletion certificate, dated September 18, 2019, which specified that the Republic of Cameroon had permanently deleted the *Zumaque Tracer* from the government's vessel registry "due to the vessel's illicit drug trafficking activity" reported by the United States. *Id.* The indictment followed. [Doc. 1]. The Defendants were taken to Puerto Rico and then flown directly to Tampa, Florida where they appeared before a magistrate judge on October 21, 2020. [Doc. 39]. That same day, the president of Cameroon "orally communicated to the U.S. Ambassador to the Republic of Cameroon his Government's consent to the exercise of U.S. jurisdiction over the crew of" the vessel. [Doc. 81-1 at p. 2.] On October 24, 2019, the Republic of Cameroon "reaffirmed its waiver of objection to the enforcement of United States law by the United States in writing." *Id.* at p. at 4.

As the case progressed, Defendants filed various motions seeking primarily to dismiss the indictment and suppress evidence. They raised various arguments relating to Cameroon's consent to search the vessel and consent or waiver of jurisdiction over them, and the delay between their detention and presentment to a judge. The United States also moved to destroy bulk contraband. The Court took evidence regarding the motions on March 5, 2020. [Doc. 176]. The United States

---

[4] Defendants were transferred to approximately five Coast guard vessels at various points. Defendants were shackled—with few exceptions such as when they needed to use the bathroom—from the initial detention until they were brought to Puerto Rico.

presented testimony from three witnesses from the Coast Guard—two of whom were members of the Coast Guard Cutter Northland that was involved in the search giving rise to the prosecution—in addition to the lead case agent Special Agent Dan McCaffrey. *Id.* The Court subsequently heard arguments on March 17, 2020. [Doc. 148]. In the report and recommendation dated April 24, 2020, the Magistrate recommended that the Court grant the United States' motion to destroy bulk contraband and deny Defendants' motions to dismiss the indictment, suppress evidence, supplement the motion to dismiss and Hurtado's second motion to dismiss. The objections followed. [Docs. 153, 155, 161].

## II.  LEGAL STANDARD

Under the Federal Magistrates Act, Congress vests Article III judges with the power to "designate a magistrate judge to hear and determine any pretrial matter pending before the court," subject to various exceptions. 28 U.S.C. § 636(b)(1)(A). The Act further vests magistrate judges with authority to submit proposed findings of fact and recommendations for disposition by an Article III judge. 28 U.S.C. § 636(b)(1)(B). After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); *Williams v. Wainwright*, 681 F.2d 732 (11th Cir. 1982). If specific objections to findings of facts are timely filed, the district court will conduct a *de novo* review of those facts. 28 U.S.C. § 636(b); *LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir.1988). If no specific objections to findings of facts are filed, the district court is not required to conduct a *de novo* review of those findings. *See Garvey v. Vaughn,* 993 F.2d 776, 779 n.9 (11th Cir.1993); *see also* 28 U.S.C. § 636(b)(1). In that event, the district court is bound to defer to the factual determinations of the magistrate judge unless those findings are clearly erroneous. *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).  Legal conclusions must be reviewed *de*

*novo. Id.* Furthermore, objections to a magistrate judge's recommendation and report must be "specific" and "clear enough to permit the district court to effectively review the magistrate judge's ruling." *Knezevich v. Ptomey*, 761 F. App'x 904, 906 (11th Cir. 2019).

## III. DISCUSSION

### a. The Factual Findings

Defendants have raised issues with certain factual determinations made by the magistrate judge. Specifically, in the objections filed by Defendant Marin, objections were raised as to the finding that (i) the ship was drifting backward during boarding possibly in an attempt to prevent the Coast Guard from boarding; (ii) the Defendants were housed on the ship; (iii) Defendants were brought into the United States for prosecution six days after the Coast Guard received the deletion certificate; (iv) the delay was caused by the President of Cameroon being in another country.[5] [Doc. 161 at p. 2-4]. Upon review of the record, the magistrate judge's findings of fact are well supported. *See* Doc. 176 at pp. 195: l. 21 -196: l. 11; 209: l. 11 – 210: l. 7; 53: l. 8 – l. 17, 60: l. 2 -l. 5, 61: l. 3 – l. 6; 118: l. 21 - 121: l. 13.[6] Having addressed these objections, the Court will turn to the legal issues raised by Defendants as to the various motions before the Court.

---

[5] Without more, Marin also argued that the magistrate judge failed to indicate that the deletion certification came long after the vessel was at the bottom of the ocean, and could not fly the flag anymore. Defendant Marin's argument as to this point is not clear. Regardless, Cameroon had given its consent to the United States' exercise of jurisdiction at all relevant times.

[6] In his objection, Hurtado argued that the facts as determined by the magistrate judge did not support the legal conclusions made. [Doc. 155 at pp. 3-8]. For example, he argued that "a captain saying he does not know how to operate AIS does not raise a suspicion that the captain is committing a crime, it simply means this captain does not know how to operate AIS that a better trained captain might so know;" "[w]hether a ship has sufficient [crew] members gives no indication of suspicious behavior-it only gives indication of less-than-safe-crew member numbers, whether on a legal or illegal venture;" "[he] objects there was anything 'suspicious', let alone 'criminally suspicious', that 'the vessel had no cargo on board and no one fishing off the ship, both of which are common for large cargo vessels.' " *Id.* The failure to challenge the underlying facts is a decisive omission when challenging a magistrate judge's factual determinations. It is apparent

5

### b. The Motion to Dismiss Bulk Contraband

The United States moved for authorization to destroy bulk contraband, in accordance with 21 U.S.C. § 881(f)(2) and 28 C.F.R. § 50.21(d), explaining—among other things—that it would retain as evidence ten kilograms of the approximately 4,225 kilograms seized from the vessel. [Doc. 88 at pp. 2]. The magistrate judge recommended that the Court grant the motion as Defendants made no allegation or provided no explanation concerning how the more than 4,000 kilograms of alleged contraband that the United States seeks to destroy is exculpatory; failed to demonstrate either bad faith by the government or prejudice; and had not shown any potential due process concerns. [Doc. 151 at pp. 9-12]. Defendants have not raised any objections to this recommendation and the Court agrees with the magistrate judge that Defendants have not shown any need for the contraband sought to be destroyed and how destruction of this evidence will prejudice their defense or otherwise deny them due process. In fact, the Court finds that considering the quantity of contraband, destruction in this case serves to further the regulation's purpose of preventing the warehousing of large quantities of seized contraband drugs which are unnecessary for due process in criminal cases and raises security and storage concerns. *See* 28 C.F.R. § 50.2l(c).

### c. The Motion to Suppress

Defendant Marin then moved to suppress the narcotics seized by the Coast Guard, arguing that the United States relied on stale information when it boarded the vessel—eighteen days after it developed its suspicion—and that the Eleventh Circuit has consistently applied a Fourth Amendment analysis to foreign vessels in international waters. [Doc. 103 at pp. 6-7]. The

---

from the report and recommendation that the magistrate judge considered the evidence presented and made determinations based on the totality of the circumstances. As such, the objection does not demonstrate a sufficient basis to disturb the magistrate judge's findings.

magistrate judge recommended that the Court deny the motion to suppress as "the Fourth Amendment does not apply to searches and seizures (arrests) by the United States of a noncitizen/non-resident alien arrested in international waters or a foreign country." [Doc. 151 at p. 12 (citing *United States v. Cabezas-Montano*, 949 F.3d 567, 593 (11th Cir. 2020))]. Even then, the magistrate judge determined that denial of the motion is warranted because "excessive detention" is not a basis for suppression of evidence and the evidence was seized prior to the detention and thus "could not have 'been come by at the exploitation of' the detention." *Id.* at p. 13 (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). Additionally, the magistrate judge recommended that Hurtado's and Diaz Morales's motions should be denied as neither provided a memorandum of legal authority in support of their request—to suppress their statements and additional evidence—as required by Local Rule Local R. 3.01(a). *Id.* at p. 14.

The Court agrees with the magistrate judge that Defendants are not entitled to the protections of the Fourth Amendment as the Eleventh Circuit recently held in *United States v. Cabezas-Montano*, 949 F.3d 567, 593 (11th Cir. 2020), *cert. denied sub nom. Palacios-Solis v. United States*, No. 19-1195, 2020 WL 3492674 (U.S. June 29, 2020). In that case, the court stated unequivocally that "the Fourth Amendment does not apply to searches and seizures (arrests) by the United States of a non-citizen/non-resident alien <u>arrested in international waters or a foreign country</u>." *Id.* Defendants are non-citizen/non-resident aliens and were arrested on the high seas. As such, consistent with the Eleventh Circuit's decision in *Cabezas-Montano*, they do not get Fourth Amendment protections. The arguments raised in the objections[7]—that the Fourth

---

[7] Marcano Morales filed an objection that was joined by Defendants Grafe and Hurtado and adopted by Defendant Marin. [Doc. 153, 154, 158]. First, he argued that the magistrate judge's conclusion that the Fourth Amendment did not apply was error. [Doc. 153 at pp. 1-2]. Second, he argued that the magistrate judge did not address the lack of reasonable suspicion as a basis to suppress the cocaine seized on the boat. *Id.* at pp. 2-3.

Amendment applied, and that the magistrate judge did not address the lack of reasonable suspicion—lack merit and the Court adopts the magistrate judges' recommendations as to the motions to suppress.

### d. *The Motion to Dismiss*

The motion to dismiss presented three grounds for dismissal of the indictment: (i) that the United States did not have jurisdiction under the MDLEA because they had not received consent from Cameroon at the time Defendants were indicted; (ii) that the technique employed by the United States to obtain jurisdiction was so outrageous that it violated due process; and (iii) that the fifty-three to fifty-five-day detention without seeing a judge violated the Fifth Amendment. [Doc. 105 at pp. 6-8, 8-10, 1-12]. The United States addressed each of the three grounds in its response. [Doc. 121]. The magistrate judge separately addressed each argument in the report and recommendation and determined that each should be denied. [Doc. 151 at pp. 15-21]. The Court agrees.

Pursuant to the MDLEA, the United States may exercise jurisdiction over a vessel which is registered in a foreign nation if that nation consents to United States jurisdiction or waives its own right to exercise jurisdiction. 46 U.S.C. § 70502(c)(1)(C). The certification from the Secretary of State conclusively shows that Cameroon consented to the United States' exercise of jurisdiction or waived objection to the enforcement of United States law by the United States at all times material. 46 U.S.C. § 70502(c)(2)(B). Additionally, that formal consent was not provided until after Defendants were indicted does not vitiate the Court's jurisdiction. *See United States v. Devila*, 216 F.3d 1009, 1017 (11th Cir. 2000) (noting that a defendant may not challenge jurisdiction "on the basis that the flag nation's consent was obtained after the vessel was boarded"). In *United States v. Bautista Ortiz*, 2020 WL 1846949, at *2 (11th Cir. Apr. 13, 2020), the Eleventh Circuit

stated unequivocally that "the MDLEA does not contain an explicit timing requirement related to jurisdiction." As such, Defendants' arguments on this point lack merit.

As to the application of the outrageous government conduct doctrine, the magistrate judge is correct that even if it was recognized, it would not apply in this case as Defendants' allegations of outrageous government conduct relate to their detainment after arrest and before indictment. [Doc. 151 at pp. 18-19]. This defense "focuses on the tactics employed by law enforcement officials to obtain a conviction for conduct beyond the defendant's predisposition." *United States v. Williams*, 755 F. App'x 926, 931 (11th Cir. 2018) (quoting *United States v. Haimowitz*, 725 F.2d 1561, 1577 (11th Cir. 1984)). The Eleventh Circuit "has suggested that the government's conduct would be sufficiently outrageous if the government 'instigate[d] the criminal activity, provide[d] the entire means for its execution, and [ran] the entire operation with only meager assistance from the defendant.' " *Id.* (quoting *United States v. Puett*, 735 F.2d 1331, 1335 (11th Cir. 1984)). That is certainly not the case here and Defendants have not provided facts showing conduct rising to the level that the Eleventh Circuit has suggested must exist for the doctrine to apply.

Lastly, the Fifth Amendment due process argument must fail. The Court agrees that Defendants have not adequately explained what elements of due process, guaranteed by the Fifth Amendment, were denied [Doc. 151 at p. 20]. The Fifth Amendment's Due Process Clause can bar an indictment and requires dismissal of an indictment if the accused can show that pre-indictment delay (i) caused actual prejudice to the conduct of his defense, and (ii) was the product of deliberate action by the government designed to gain a tactical advantage. *United States v. Witchard*, 646 F. App'x 793, 795 (11th Cir. 2016). "A stringent standard is used when examining prejudice." *Id.* The magistrate judge's recommendation that Defendants' claims fail on both grounds is supported by the record before the Court. Defendants have not explained how they were prejudiced by the

9

pre-indictment delay and there is no basis to substantiate a finding that the forty-eight-day delay was due to bad-faith on the part of the United States. "Even where no good, detailed reason for the delay exists," the Eleventh Circuit has indicated that it "will not provide relief due to a pre-indictment delay unless there is evidence of bad faith or intent to gain a tactical advantage." *United States v. Marshall*, 360 F. App'x 24, 26 (11th Cir. 2010). The requisite factors have not been shown to exist in this case.

### e. *Motion to Supplement and Second Motion to Dismiss*

The motion to supplement and amend the motion to dismiss is purportedly for the purpose of clarifying the request for dismissal on due process grounds and providing as an additional basis for dismissal the protections of Federal Rules of Criminal Procedure 5(a)(1)(B) and 48. [Doc. 145 at pp. 1, 3]. The Second Motion to Dismiss—by Defendant Hurtado—raises the same arguments regarding Rules 5 and 48. [Doc. 147]. As the magistrate judge noted, Defendants have shown no reason why their legal arguments under the Federal Rules of Criminal Procedure could not have been raised earlier. The Court agrees that the motions are untimely, and that Defendants have not shown good cause warranting consideration of the "new arguments" in accordance with Federal Rule of Civil Procedure 12(c)(3). Even then, Defendants' arguments fail on the merits as the magistrate judge noted. "[T]he purpose of Rule 5(a) is to prevent oppressive police interrogations and other 'third-degree' tactics before bringing the accused in front of an officer of the court." *Cabezas-Montano*, 949 F.3d at 591. The remedy is exclusion of evidence which is gained during the delay by the use of such tactics. *Id.* The magistrate judge carefully assessed the various factors considered in determining whether a delay was unnecessary under Rule 5(a) and correctly found that the delay in this case was entirely attributable to the issues of international communication, comity and jurisdiction. And even if the Court were to find that the delay was unnecessary,

Defendants have identified no evidence that would be suppressed on this basis. *Id.* at 591, 594 n.25 ("federal courts have concluded that the remedy for a *McLaughlin* or Rule 5(a) delay-in-presentment violation is suppression of the evidence obtained during the delay"). As to Rule 48, "dismissal is mandatory only if the defendant's constitutional rights have been violated." *United States v. Knight*, 562 F.3d 1314, 1324 (11th Cir. 2009). Having not shown a denial of due process, Defendants have not satisfied the dictates for mandatory dismissal pursuant to Rule 48. For these reasons, the court agrees with the recommendations of the magistrate judge that the motion to supplement and the second motion to dismiss are due to be denied.

Accordingly, it is hereby **ORDERED**:

1. Defendants' Objections to the Magistrate Judge's Report and Recommendation [Docs. 153, 155, 161][8] are **OVERRULED.**

2. The Report and Recommendation of the Magistrate Judge [Doc. 151] is **ADOPTED**, **CONFIRMED**, and **APPROVED** in all respects and is made a part of this Order for all purposes, including appellate review.

3. The United States' Motion for Authorization to Destroy Bulk Contraband [Doc. 88] is **GRANTED.**

4. Defendant Asdrubal Quijada Marin's Motion to Suppress [Doc. 103] is **DENIED**.

5. Defendant Asdrubal Quijada Marin's Motion to Dismiss [Doc. 105] is **DENIED**.

6. Defendant Asdrubal Quijada Marin's Motion to Supplement and Amend Motion to Dismiss [Doc. 145} is **DENIED**.

---

[8] Again, Defendants who had not moved to join these motions subsequently moved to adopt them. [Docs. 154, 156, 157, 158, 160, 162, 163, 164, 165]. The Court granted the motions to adopt. [Doc. 169, 170]

7. Defendant Juan Carlos Acosta Hurtado's Rule 5, Rule 48, Unnecessary Delay, and Due Process Violation Motion to Dismiss [Doc. 147] is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on November 6, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any